HEATHER E. WILLIAMS, #122664
Federal Defender
RACHELLE BARBOUR, #185395
Assistant Federal Defender
OFFICE OF THE FEDERAL DEFENDER
801 I Street, 3rd Floor
Sacramento, CA 95814
Tel: 916-498-5700/Fax 916-498-5710
rachelle.barbour@fd.org

Attorney for Defendant
LISA GRAEF

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 2:14-cr-00159-TLN |
| | ) | |
| Plaintiff, | ) | |
| | ) | CORRECTED STIPULATION AND ORDER |
| v. | ) | RE: REMOVAL OF SPECIAL CONDITION |
| | ) | OF SUPERVISED RELEASE |
| LISA GRAEF | ) | |
| | ) | |
| | ) | Chief Judge Hon. Troy L. Nunley |
| Defendant. | ) | |

The parties, Defendant LISA GRAEF, and the United States of American, through AUSA Heiko Coppola, with the approval of the UNITED STATES PROBATION OFFICE, hereby stipulate and request that the Court modify Ms. Graef's special conditions of supervision as set forth below pursuant to 18 U.S.C. § 3583(e)(2) and USSG 5D1.4(a). This modification is based on changed circumstances since Ms. Graef's sentencing, including her success during years of post-custody supervision. The parties request that the Court strike special condition #7, pertaining to minors, from the list of special conditions to which Ms. Graef must abide.

The new Sentencing Guideline, 5D1.4(a), encourages an individualized assessment after release from imprisonment to determine if the conditions are still appropriate. In this case, Ms. Graef's conduct on supervision has been exemplary and special condition #7 is not necessary to support public safety. Because Ms. Graef has a two-year-old daughter and a very supportive

extended family, special condition #7 actually impedes her family support and pro-social development.

Ms. Graef's 10-year term of supervision began on October 20, 2022, when Ms. Graef released from the Bureau of Prisons.  Ms. Graef is supervised in the current district, after previously being supervised in the Northern District of California where she lived for years, and then transferring back to our District when she and her husband bought a house.

Defense counsel has contacted Ms. Graef's current Probation Officer, as well as her prior Probation Officers in the Northern District of California, and her prior and current Probation Officers in this District, to confirm her compliance.[1]  Because Ms. Graef lived with her grandmother in the Bay Area when she released in 2022, jurisdiction over her case was transferred to the Northern District of California (ECF Doc. 71), where she was supervised by several Probation Officers who have provided Defense counsel with glowing reports on her compliance.  Her first Probation Officer, Nicole Brown, sent Defense counsel the following information:

> I supervised Ms. Graef from 8/22-7/23. She did not have any issues of noncompliance during that time. I then transferred her case to Shonte Brittle (who no longer works here). supervised Shonte, and Ms. Graef had no issues of noncompliance while Shonte supervised her (from 7/23-11/24). Bailee took over in November 2024 and supervised her through 10/25 – so I will let her respond to her compliance during the last year.  During the time that Shonte and I supervised her, [Ms. Graef] seemed to always being making positive strides on supervision. She maintained a job, had strong family ties, got married, had a baby and now has secured her own home. Hope that helps. Please reach out if you need anything else.

Ms. Graef's final Probation Officer in the Northern District, Bailee Holstein, provided the following information:

> Ms. Graef did well for the short period I was supervising her before her departure from NDCA. She was gainfully employed, actively raising her child, successfully completed sex offender treatment, and purchased a house upon her transfer back to the sentencing district. She had no issues of noncompliance while I supervised her and appears to have reintegrated well into the community since her release from custody.

---

[1]    Ms. Graef was transferred to a new USPO in the Eastern District, Zaylin Miller, on April 7, 2026.  The parties have consulted with Officer Miller on this request, and Officer Miller can confirm that her office is in agreement with it.

As noted by these Probation Officers, Ms. Graef and her husband moved to the current District when they purchased a home in late 2025.  Jurisdiction was transferred back to the instant District in September 2025.   Ms. Graef has been supervised in this District for approximately six months by United States Probation Officer Kristen Smokes.  Officer Smokes confirmed Ms. Graef's compliance with all her conditions.  On April 7, 2026, her supervision was transferred to USPO Zaylin Miller, who has also been consulted regarding this request and has notified Defense counsel that the Probation Office agrees with it.

The parties agree that Ms. Graef was 19 years old when she committed the crime for which she was convicted.  She has no other criminal history.  At sentencing, the Government noted that Ms. Graef's early formative years included "an utter lack of structure, emotional support and appropriate parental involvement, as well as, serious educational difficulties."  (ECF Doc. 62, p. 2.)  Ms. Graef was convicted of attempting to sex traffic a minor on behalf of her then-boyfriend, a pimp who began grooming Ms. Graef into the prostitution lifestyle when she was 17 years old.  (PSR, para. 14.)

The Defense sentencing memorandum described the offense thus:

> Lisa, a special education student raised by a drug-addled mother, has tremendous self-esteem issues and was only 19 when her 27 year-old boyfriend, Eric Miller who she had been with since she was 17, threatened to leave her if she would not sell her body to other men for him. When she hesitated because she did not want to prostitute herself, Eric told her that if she loved him, but did not want to work as a prostitute, she could get other women to prostitute for him and that would keep him happy as long as he was getting money.  (Doc. 61, pp. 1-2.)

Mr. Miller promised Ms. Graef that he would marry her and have a family with her, which is all she ever wanted.

Ms. Graef had grown up in rough part of Oakland, surrounded by prostitution, and her own mother had resorted to prostitution in order to satisfy her drug addiction.  (ECF Doc. 61, p. 2; PSR, para. 100.)  To Ms. Graef, desperate to hold on to Mr. Miller and any promise of a "normal" life, Mr. Miller's increasingly controlling demands seemed reasonable, and she reached out to young women on the Internet in an attempt to satisfy them.  When she was arrested, Mr.

Miller left her holding the bag and was never prosecuted for his involvement in this crime.  Ms. Graef remained afraid of him even while this case was proceeding.  (PSR, para. 13.)

Ms. Graef made it clear in her statements at sentencing that she would never reoffend. As the AUSA noted in his Sentencing Memorandum, "Only time will tell."  (Doc. 61, p. 3.) Happily, Ms. Graef has proven herself right.

Ms. Graef is now a 31-year-old mother, wife, valued supervisorial employee at Safeway, and hospice caregiver to her family members. Ms. Graef received a mandatory minimum ten-year BOP sentence and served that sentence at FCI Dublin.  She returned to the community in October 2021 to a halfway house for six months, before returning home to her grandmother's home on BOP home confinement for her final six months.[2]  Upon her release from incarceration, Ms. Graef lived in the Oakland halfway house and started working at Safeway and their affiliate Pak'n Save within weeks.  Ms. Graef began her term of TSR in October 2022, after already being in the community for a year of BOP supervision.  Ms. Graef continues to work for Safeway over four years later and until recently was driving over 90 miles each way to her job at the Safeway store in Hercules.

On April 1, 2026, Ms. Graef was notified that she had been selected by Safeway for participation in its Assistant Store Director Training Program, which she attended the week of April 13, 2026, at Safeway headquarters in Pleasanton, California.  Upon completion of that program, Ms. Graef's training has continued at the Clayton Safeway store, outside Concord, California.  She hopes that she will soon be allowed to transfer to a store closer to her home in this District.

Since Ms. Graef's release from prison in 2021, she has become a rock for her family. Ms. Graef's manager at the Hercules store, Cherise Martin, has submitted a letter singing her praises.  (Exh. A.)  Ms. Graef works well over 40 hours every week, including significant overtime.  Ms. Graef's work for Safeway has been exemplary and consistent.  She is planning to

---

[2]    Although this additional year in the community was not on supervised release, it adds to the time that Ms. Graef has been successfully rehabilitating and proving her compliance with all conditions.

make her career there and is training for a promotion.  Her prior store manager, Tina Wong, has also submitted a letter of support.  (Exh. B.)

Ms. Graef also took care of her grandmother during the last years of her life.  Ms. Graef's grandmother was in her nineties, and Ms. Graef lived with her, performing all the tasks of caring.  Her grandmother passed away in February 2024.  Ms. Graef's cousin, Jennifer Dunckel, discusses how Ms. Graef's selflessness took a huge burden off the rest of the family, because Ms. Graef was able and willing to live with their strong-willed grandmother and enable her to live in her home until she passed.  (Exh. C.)  Ms. Graef's great-aunt, Linda Boicelli, also notes how much help Ms. Graef gave the family when she took care of all of her grandmother's needs until her death.  (Exh. D.)  Other family members have rallied in support of Ms. Graef, during this challenging time, noting that Ms. Graef's mother was diagnosed with cancer in late 2025.  (Exh. E.)  Several of these letters were submitted prior to Ms. Graef's mother's death in November 2025, others were submitted afterwards.  (Exhs. F-I.)

Anyone familiar with caregiving knows how much patience and nurturing it takes for one to provide care for a dying relative.  This is a testament to Lisa's true strength of character. Lisa was called upon again to care for her mother in late 2025 during her bout with cancer.  Lisa's mother lived in the Sacramento area and did not want to move, so Lisa would stop in Sacramento on her commute to and from Hercules for work, so that she could tend to her mother.  Her mother died on November 2, 2025, and Lisa planned her funeral and arranged all of her affairs.  It is clear that Lisa has grown up considerably since her arrest at the age of 19.  She is a mature, adult woman who is responsibly taking care of everyone in her life, while holding down a job at which she is prized.



During this time, Lisa met her now-husband, Aislen Ealy at Safeway. They started dating in late 2021 and soon made plans to spend their lives together. Lisa and Aislen had a daughter, Sophia, in April 2024. Unfortunately, a week after Sophia's birth, Aislen suffered a heart attack, followed by another one about a week later. He was only 25 years old. Lisa, a brand new, first-time mother, cared for her newborn and her husband at the same time. Mr. Ealy has submitted a letter about the life they have together. (Exh. J.) Lisa took care of him during his incapacity, while also nursing and raising their newborn daughter. She is the primary breadwinner of the home while Mr. Ealy regains his strength after his heart attacks. Sophia is now almost two years old.

Aislen and Lisa saved up for years and eventually were able to purchase a home in Salida in August 2025. This resulted in their move back to the Eastern District and the transfer of jurisdiction over this case back to our district. As noted above, Lisa has commuted up to 90 miles each way to her job at Safeway. During her time off, she wants to spend quality time with her husband, child, and extended family.

While supervised in the Northern District, Lisa had been allowed to go with her daughter to parks and visit her family members with children. However, in this District, Lisa is not allowed to do these things, even though her terms of supervision have not changed, and she has only further proven that she poses no risk to anyone. This is part of the impetus for this request for modification of Lisa's special conditions of supervision.

Lisa's prior case occurred over ten years ago. It was internet-based and completely at the

instigation of her then-boyfriend.  It did not involve young children, nor did it involve any sexual contact or sexual intent on the part of Lisa.  Nonetheless, Lisa must register under Penal Code section 290, and she has religiously adhered to that requirement.  It is a testament to Lisa's impressive work and personal skills and qualities that, despite her status, she has become a prized member of the Safeway team.  Nothing about her prior conduct indicates that she cannot be around her relatives or fully parent her two-year-old daughter.  Lisa has submitted a letter for the Court to consider.  (Exh. L.)  As she did when she was originally sentenced, Lisa explains why she will never been in trouble again.

Lisa is fully compliant with all of her conditions.  She successfully completed sex offender counseling about a year ago.  (Exh. K.)  Given Lisa's demonstrated rehabilitation, successful reentry into the community, and compliance on supervised release, the parties stipulate and jointly request that the Court modify her terms of supervision to remove special condition #7, which prohibits her from spending time with family members who have children in their homes, and keeps her from being able to take her own child to the park or join her in activities.  This will allow her to spend time with extended family members, take her daughter to the park, and engage in parenting activities.

There is no public safety need for this condition now.  Lisa's case was very specific to that time in her life when she was barely an adult herself.  It was also specific to her relationship with her ex-boyfriend, who put her up to it.  She was 19 years old, now she's over 30.  She has never showed any sexual interest in any minors, even during the course of this case.  This is a very different "Special conditions of supervised release 'are permissible if they are reasonably related to the goals of deterrence, protection of the public, or rehabilitation of the offender, taking into account the offender's history and personal characteristics, and involve no greater deprivation of liberty than is reasonably necessary for the purposes of supervised release.' *United States v. Watson*, 582 F.3d 974, 982 (9th Cir. 2009) (internal quotation marks and citation omitted)." *United States v. Maya*, No. 24-2930, 2025 U.S. App. LEXIS 26257, at *3-4 (9th Cir. Oct. 8, 2025)(unpublished).  A condition is not reasonably necessary if "there [are] other more

sharply focused conditions that could be expected to accomplish the goal of the overbroad restriction." *Watson*, 582 F.3d at 984.  Given the particular circumstances of her case, and her current situation, over ten years later, the condition is not reasonably necessary.

Dated:  April 29, 2026

HEATHER E. WILLIAMS
Federal Defender


*/s/ RACHELLE BARBOUR*
RACHELLE BARBOUR
Attorney for Defendant
LISA GRAEF

Dated: April 29, 2026                ERIC GRANT
United States Attorney

*/s/ Heiko Coppola*

_____

HEIKO COPPOLA
Assistant United States Attorney


**ORDER**


For the reasons set forth above, the Court removes special condition #7 from Ms. Graef's special conditions of supervised release.


DATED: May 12, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE